DocuSign Envelope ID: 3EA5E3F4-A29C-4177-8088-9F0B30C7D079

**EXHIBIT C**



**NHC**
NATIONAL HEALTH CORPORATION

 **NURSING EMPLOYMENT AGREEMENT** 

This **NURSING EMPLOYMENT AGREEMENT** ("Agreement") is made and entered into this **24th day of March 2021**("Agreement Effective Date") by and between (Employer) **National Health Corporation** at their location, **NHC Place Sumner, 140 Thorne Blvd, Gallatin, TN 37066** and **Nerisssa Abrazaldo Precioso** ("Employee").

### WITNESSETH:

**WHEREAS**, Employee has expressed desire to apply for lawful permanent U.S. residency (Green Card), through employment and sponsorship by the Employer;

**WHEREAS**, Employee has obtained one (1) of the following: (i) CGFNS Certification; or (ii) a state nursing license from the state in which the Assigned Facility (as that term is defined below) is located; or (iii) successful completion of the NCLEX exam;

**WHEREAS**, Employee has completed a minimum of twelve (12) months' related work experience in a similar clinical setting in the Philippines; and

**WHEREAS**, Employer desires to sponsor Employee to work as a registered nurse, and Employee desires to be employed by Employer in such position, upon the terms and conditions set forth below.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, the parties agree as follows:

1. **INCORPORATION OF RECITALS**
   The Recitals set forth above are hereby incorporated herein and made a part of this Agreement.
2. **CONDITIONS OF EMPLOYMENT**
   a. Employee agrees that, upon being awarded the appropriate working or immigrant visa to work in the United States and obtaining the appropriate state license, he/she will be employed by Employer and will work pursuant to assigned facility's Full Time Hour designation, not to exceed forty (40) hours per week, with the exception of overtime as outlined in section 4(b) of this agreement. Employee may be reassigned from time to time in Employer's sole discretion (each, an "Assigned Facility") for a period of not less than three (3) years, commencing on the date upon which Employee has completed each of the following ("Commencement Date"):

      i. obtained the appropriate licenses for the state in which the Assigned Facility is located;

1

DocuSign Envelope ID: 3EA5E3F4-A29C-4177-8088-9F0B30C7D079




ii. successfully completed a background check and obtained negative drug test results;

iii. completed and signed Employer's required new hire paperwork including, but not limited, to a Mediation and Arbitration Agreement and Non-solicitation and Confidentiality Agreement;

iv. completed Employer's orientation, as more fully described in SECTION 7 ("ORIENTATION") of this Agreement; and

v. begun work at Assigned Facility.

b. The Employee agrees that he/she will not seek employment through any person/entity other than the Employer for a period of three (3) years from the Commencement Date unless Employee is seeking employment due to a change of ownership at the Assigned Facility and the Employer could not offer an alternate placement at a new Assigned Facility.

c. Employee shall maintain all applicable licenses and any other appropriate qualifications current and in good standing. Employee is not and shall not become excluded, debarred, or otherwise declared ineligible to participate in the federal healthcare programs defined in 42 USC § 1320a-7b or convicted of a criminal offense related to the provision of healthcare items or services and proposed for exclusion, debarment or ineligibility.

3. **WORK ASSIGNMENTS**

Employee, a registered nurse is being engaged by Company for the performance of the Services. Employee shall have the responsibilities, duties, and authority reasonably accorded to and expected of this position. The parties acknowledge that throughout the Term of this Agreement, Employee, with the assistance of his/her collaborating physician (if applicable), will exercise Employee's independent professional judgment, with the assistance of his/her collaborating physician (if applicable), as to all matters relating to health care rendered to patients and shall render only such Services as are determined by Employee, with the assistance of his/her collaborating physician (if applicable), to be ethically and medically necessary for the patient. The Employee shall provide the Services within his/her scope of practice and follow the ethical and professional standards of practice of his/her profession recognized in the State(s) and in compliance with all applicable Federal, Medicare, Medicaid, State, and other professional and insurer guidelines, including Company's practice guidelines. Certain specific Company duties and guidelines are set forth on **Exhibit A** (attached hereto).

Employee agrees to work those hours and shifts as designated by Employer, which may include but are not limited to weekends, evening shifts, night shifts, or on-call shifts.

4. **COMPENSATION**

a. Employee shall be paid at an hourly rate equivalent to an annual salary of **$58,240 or 28.00/hr.** in US Dollars for his/her employment with the Employer as a registered




nurse. Compensation is based on the prevailing wage rate for registered nurses, taking into account Employee's related work experience. This rate does not include weekend differentials or overtime pay.

b. If Employee works more than forty (40) hours per week ("Overtime"), Employee shall be compensated at a rate of one and one-half (1½) times Employee's current hourly rate of pay for all such Overtime hours worked, in accordance with applicable state and federal wage and hour laws. Employee must request permission from **Supervisor** before incurring any Overtime hours.

c. Employee compensation shall be paid as earned in accordance with applicable Assigned Facility's applicable pay policy and all applicable local, state and federal laws.

Upon termination of this Agreement for any reason, all monies and compensation paid to Employee shall immediately terminate as of the last day of Employee's active employment, except as required by law.

5. **BENEFITS**

a. Employee shall be eligible to receive those benefits that are offered by Employer to other personnel holding similar positions, which may include, but is not limited to, health insurance, life insurance, personal leave, paid time off, and retirement savings plans (e.g., 401k plans). Said benefits will be made available to Employee subject to the same terms and conditions normally imposed upon similarly situated employees and to the extent consistent with applicable law and the terms of the applicable Employee Benefit Plans. The Company reserves the right to amend or cancel any Employee Benefit Plans at any time in its sole discretion, subject to the terms of such Employee Benefit Plan and applicable law.

6. **BREACH OF CONTRACT**

In the event Employee does not complete the three (3) year employment commitment as set forth in SECTION 2 ("CONDITIONS OF EMPLOYMENT") of this Agreement, Employee shall reimburse Employer a prorated portion of the Employer Expenses, up to a maximum of Forty Thousand Dollars ($40,000.00). The amount to be reimbursed by Employee shall be calculated by Employer and shall represent the proportionate amount of the funds expended based upon the remaining under Employee's three (3) year employment commitment at the time the Employee ceases employment with Employer. The amount due hereunder will be payable in accordance with the repayment schedule as determined by Employer; however, repayment shall be made no later than ninety (90) days after the last date of employment.

In the event that Employer must undertake any efforts to collect the repayment of Employer Expenses, Employee hereby agrees to reimburse Employer for all costs and expenses (including reasonable attorneys' fees) related to such collection efforts.



7. **ORIENTATION**

Employee agrees to participate in Employer's orientation program to familiarize Employee with Employer's procedures, rules and regulations. Employee further agrees to participate in any subsequent orientation and training programs that may be required by Employer.

8. **COMPLIANCE**

Employee agrees, in all aspects of his/her employment, to comply with the policies, procedures, standards and regulations of Employer. Employee shall perform his/her duties faithfully, competently, diligently, and in the best interest of Employer at all times. Employee shall abide by all applicable federal, state and local laws and regulations.

Employee acknowledges by execution of this Agreement that he/she is aware of Employer's Code of Ethics and Business Conduct and Compliance Program and agrees to abide by it.

9. **TERMINATION**

a. This Agreement shall commence as of the Agreement Effective Date set forth above and shall continue for a period of three (3) years from the Commencement Date as defined in Section 2 ("<u>CONDITIONS OF EMPLOYMENT</u>") unless terminated sooner as set forth herein ("**Term**").

b. Employer, at its sole discretion, may immediately terminate this Agreement at any time with notice to Employee upon the occurrence of any of the following events:

    i. Employee fails or refuses to comply with the Company's handbook, policies, standards, procedures, clinical guidelines/manuals and regulations of Employer or those of Assigned Facility.

    ii. Employee's failure or refusal to comply with all applicable Federal, State, local, Medicare, Medicaid, and DEA policies (if applicable), standards, or regulations applicable to the Services; and any and all other governmental authorities and entities governing the performance of the Services;

    iii. Employee fails or refuses to comply with the lawful directives of his/her supervisors or manager.

    iv. Employee engages in misfeasance or malfeasance demonstrated by a pattern of failure to perform job duties competently, diligently, and professionally.

    v. Employee commits a crime involving a felony, fraud, dishonesty, breach of trust, physical harm to any person, substance abuse, misconduct in rendering services, moral turpitude, or any other act of misconduct directly or indirectly relating to or reasonably likely to affect the performance of Employee's duties on behalf of the Employer;

DocuSign Envelope ID: 3EA5E3F4-A29C-4177-8088-9F0B30C7D079




vi. Employee fails to meet the terms of this Agreement, whether initially or on an ongoing basis.

vii. Employee is unable to perform the essential functions of his/her position.

viii. Employee falsified or misrepresented any information in this Agreement, on his/her employment application, resume, during the Employee's interview(s), or in any other documents submitted by the Employee prior to or during the Term hereof.

ix. Employee's license to practice his/her profession in any State is suspended or revoked, or Employee is subject to any criminal or professional investigation or sanction.

x. The sale, transfer, or other disposition of all or substantially all of the assets of Employer, the distribution of Employer's assets to its shareholders in liquidation, or the discontinuance of Employer's conduct of its business; or

xi. For cause, as determined at Employer's discretion.

This Agreement will automatically terminate upon Employee's death or permanent disability. As used herein, "permanent disability" means a bodily injury or disease that impairs Employee's physical and/or mental ability to the extent that s/he will never again be able to perform his/her duties under this Agreement, with or without reasonable accommodation.

Except as set forth herein, Employee does not have any right to continue as an employee for any specified or definite time. No one other than the Company's _____ or _____ shall have any authority to enter into any agreement with Employee for any period of time different than contained in this Agreement, or to make any agreement contrary to the terms of this Agreement.

In the event either party to this Agreement terminates this Agreement, such termination will be in accordance with the applicable employment laws of the United States of America or the state in which the currently Assigned Facility is located.

In the event of a termination of the agreement for any reason, Employee shall be prohibited for a period of twelve (12) months from serving as an employee, owner, agent, or independent contractor, of any other skilled nursing facility, assisted living facility, long term care facility, geri-psych hospital, long term care facility, or any other facility that provides the same or substantially similar services as that provided by the employer within the greater of (i) a ten (10) mile radius of the facility where employee worked, or (ii) the county in which the facility where employee worked is located. This covenant shall survive the termination of the agreement and may be enforce by injunction in a court of appropriate jurisdiction.

10. **BILLING**

Company shall have the exclusive right to bill patients, their insurance carriers, and any governmental agencies for Services rendered by or under the supervision of Employee. All patients examined and treated by Employee pursuant to this Agreement will be considered Company's

DocuSign Envelope ID: 3EA5E3F4-A29C-4177-8088-9F0B30C7D079



patients for purposes of all Services rendered, and they will be billed accordingly. Employee shall cooperate fully with Company to satisfy all requirements for prompt, accurate, and complete billing.

Employee hereby designates and appoints Company and its duly authorized officers and agents, as Employee's agent and attorney in fact for the purpose of enrolling and maintaining Employee in any and all governmental and private health and/or insurance plans and for endorsing and depositing into Company's bank accounts, checks, drafts or other negotiable instruments that are received by Company that are in payment for Services rendered by Employee by said plans. Company is further appointed as the exclusive billing and collection agent for Employee for all Services provided by Employee under the terms and conditions of this Agreement. This agency shall continue during the entire period of Employee's employment and for such period of time required by Company to collect all of Employee's accounts receivable upon termination of this Agreement for any reason.

11. **EMPLOYEE'S CONDUCT**:

While acting under this Agreement and in performing the Services for or on behalf of Company, Employee shall refrain at all times from any action which reasonably could be construed to constitute improper self-dealing, an improper conflict of interest, or which would be in competition with Company's proprietary or business interests; and Employee agrees to abide by any conflict-of-interest policies of Company. All employees are expected to conduct business on behalf of the Company in a moral and ethical manner. No payments hereunder shall be for referrals of patients and no provision of this Agreement shall require or be construed to require that Employee make referrals of patients to Company. The Company does not make or tolerate payments of bribes, kickbacks, or gratuities to government officials, employees of customers/facilities, or others as a means of securing or providing the Services. Employees should not accept from customers or competitors gifts or favors of a value that could be perceived as placing the Employee under obligation to the giver.

Employee acknowledges that if, pursuant to this Agreement, he/she performs Services that involve the use or disclosure of individually identifiable health information ("IIHI"), then the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA"), and, stricter state laws, as applicable, require that the IIHI be protected from inappropriate uses or disclosures. Employee agrees to treat IIHI as Confidential Information and to comply with the requirements of applicable law. Employee also agrees to execute the Company's standard HIPAA Business Associate Agreement, if required.

12. **RETURN OF COMPANY PROPERTY**

All property/equipment delivered to Employee by or on behalf of the Company or by its clients, and all records compiled by the Employee that pertains to the business of the Company, shall be and remains the property of the Company and is subject at all times to its discretion and control. Likewise, all such property/equipment and records shall be delivered promptly to the Company without its request, upon the voluntary or involuntary termination of Employee's employment.




13. **GOVERNING LAW**

This Agreement shall be controlled and governed by the laws of the state in which then currently Assigned Facility is located. The U.S. Commonwealth or State in which the then currently Assigned Facility is located shall have jurisdiction of any litigation or other dispute resolution measures sought arising from this Agreement or Employee's employment, including any question of the enforceability hereof.

14. **ASSIGNABILITY**

This Agreement, and any and all rights and obligations hereunder, are freely assignable by Employer without the consent of Employee. This Agreement is not assignable by Employee.

15. **SEVERABILITY**

Except as otherwise provided herein, in the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of this Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.

16. **REPRESENTATIONS**

The parties hereby acknowledge that they have fully read this Agreement and that they understand its binding effect on them.

17. **CHANGE OF ADDRESS**

Employee shall notify Employer, in writing, within ten (10) days of the effective date of any changes to Employee's legal name, address or telephone number.

18. **WAIVER**

Failure of any party to insist upon compliance with any provision hereof shall not constitute a waiver thereof. No waiver of any provision of this Agreement shall be effective unless it is in writing and signed by an authorized office of the party against whom it is asserted. Any waiver of any provision of this Agreement shall only be applicable to the specific provision and instance to which it is related and shall not be deemed to be a continuing or future waiver as to such provision or as to any other provision.

19. **ENTIRE AGREEMENT**

This Agreement constitutes the entire understanding between the parties and no changes, amendments or alterations shall be effective unless agreed to in a duly executed written instrument.

DocuSign Envelope ID: 3EA5E3F4-A29C-4177-8088-9F0B30C7D079



20. **SURVIVAL OF TERMS**

The provisions of this Agreement which, by nature, reasonably could be anticipated to survive the termination or expiration of this Agreement are hereby deemed to survive any such termination or expiration of this Agreement.

21. **EXECUTION OF SUBSEQUENT DOCUMENTS**

Employee agrees to execute all such documents as reasonably requested by Employer or otherwise deemed necessary to evidence the obligations set forth in this Agreement

22. **COUNTERPARTS AND ELECTRONIC RECORD-KEEPING**

This Agreement may be executed in one or more counterparts and each such counterpart may be signed, transmitted, and/or stored electronically, with each deemed as an "original" and all of which together constitutes one and the same written instrument. The parties agree that any such electronic versions are just as valid and enforceable as an original hard copy version would be.

23. **NONDISCRIMINATION**

Each party represents and warrants that it does not and will not discriminate or retaliate against any person because of race, creed, color, national origin, gender, gender identity, sexual orientation, veteran status, or handicap, or as otherwise may be prohibited by law. Each party hereto warrants that it is in full initial and ongoing compliance with all current applicable federal, state, and local laws, regulations, and ordinances, including, without limitation:

1. Civil Rights Act of 1964.

2. The Rehabilitation Act of 1973.

3. The Fair Labor Standards Act.

4. Equal Opportunity Clause (41 CFR 60.250.5(a); 41 CFR 60-300.5(a); and 41-CFR 60.741.5(a));

5. Affirmative Action Programs (41 CFR 60-1.40(a)(2)); and

6. Other laws that may apply from time to time as amended.

Each party also agrees to comply with the regulations set forth in 29 CFR part 471, Appendix A to Subpart A regarding NLRA compliance as applicable.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date first set forth above.

"Employer"

By: **Jeffrey R. Smith**

Signature: *Jeffrey R Smith* (DocuSigned by: E065BA189DB44E6...)

Print Title: **President & Treasurer**

Date: 3/25/2021


"Employee"

By:

Signature: (DocuSigned by: 04C3008A6D164A4...)

Print Name: **Nerisssa Abrazaldo Precioso**

Date: 3/25/2021

9